UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTLYNN USA DIVISION, INC.,

    Plaintiff,

v.                      Case No: 2:18-cv-521-FtM-99NPM

TITAN TRANS CORPORATION,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #46) filed on July 24, 2019. Plaintiff filed a Response in Opposition (Doc. #50) on August 21, 2019. A Reply (Doc. #53) and Surreply (Doc. #60) were filed. Defendant also moves to strike (Doc. #54) the Affidavits submitted by plaintiff in opposition to summary judgment, and plaintiff responded (Doc. #60). For the reasons set forth below, the Motion for Summary Judgment is granted in part and denied in part and the Motion to Strike is denied.

**I.**

This case stems from damage to cargo that occurred during interstate transport by defendant Titan Trans Corporation (a common carrier) for plaintiff Scotlynn USA Division, Inc. (a motor freight brokerage company). Titan Trans was hired by Scotlynn to transport 21 boxes containing a total of 42,147 pounds of beef to

Cargill, Inc. in accordance with a Bill of Lading. The boxes tipped over while in transit and Cargill rejected the load. Thereafter Cargill filed a damage claim with Scotlynn for $89,832.58, which Scotlynn paid. Scotlynn claims it suffered damage as a result of Titan Trans' mishandling of the cargo entrusted to it and in its exclusive control during transport.

Only two claims remain – a claim for contractual indemnity under a Property Broker/Carrier Agreement (the "Agreement") and for violation of the Carmack Amendment to the Interstate Commerce Act, which governs a motor carrier's liability for the loss of or damage to goods shipped in interstate commerce. 49 U.S.C. § 14706. (Doc. #5.) Defendant moves for summary judgment on both claims, arguing that the undisputed evidence establishes that it did not cause any of the damages claimed and is therefore exempted from liability. Defendant also argues that the indemnity claim is preempted by the Carmack Amendment.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material"

if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

The undisputed material facts are as follows: Titan is a common carrier who transports freight to and from points throughout the country. On May 12, 2014, Scotlynn and Titan entered into a contract entitled "Property Broker/Carrier Agreement." On or about September 21, 2016, Scotlynn hired Titan to transport 21 boxes containing a total of 42,147 pounds of beef from Augusta, Georgia to Butler, Wisconsin on behalf of Scotlynn's customer. Upon arrival it was discovered that the boxes of beef tipped over while in transit, and the receiver rejected the load in its entirety.

The parties, however, dispute the way the beef was loaded. Defendant submits the Affidavit of Buguslaw Zaranski, previously employed by Titan who was the driver of the shipment at issue. Zaranski states that FPL Food, LLC was the shipper of the beef to be transported to Cargill. (Doc. #46-1, ¶ 3.) When picking up the load, Zaranski backed his trailer into the loading area, which was a secured, food-safe area. He states that FPL did not permit him to exit the vehicle during the loading. (Id., ¶¶ 5, 6.) FPL loaded, secured, and sealed the beef cargo onto the trailer without Zaranski's supervision or participation. Zaranski states he could not view the loading of the beef, could not verify how it was secured, and could not open the trailer after loading. (Id., ¶ 7.) He states that while driving the load he was not aware of any

shifting of the cargo and that he accelerated and braked without any unusual incidents or harsh turns. (Id., ¶ 10.)

In response, Scotlynn submits the Affidavit of Rick Miller, a Transportation Manager with Cargill, Inc. Miller states that Cargill has purchased tens of thousands of loads of beef from FPL and he is familiar with FPL's procedures for loading beef and bracing it for transit. (Doc. #50-1, ¶ 6.) Miller was not present at the loading of the beef in this case, but provides testimony and opinion based upon his familiarity with FPL's loading methods generally. In this regard, Miller states that while loading beef onto a trailer, FPL permits the driver to observe loading. When loading was complete, FPL gave the driver a seal for the trailer along with a bill of lading for signature. FPL required the driver to close the trailer doors and seal the trailer, and the driver could inspect the load before signing a bill of lading. (Id., ¶ 7.) Miller opines after reviewing the pictures of the load in this case that extreme braking caused the damage. (Id., ¶¶ 11, 12.)

Scotlynn also submits the Affidavit of Richie Sowell, Logistics Account Manager for Scotlynn. Sowell prepared the Carrier Conformation for the shipment at issue, which is Scotlynn's means of confirming with the carrier the details of pickup and delivery of the load, the equipment required to transport the load, and the amount Scotlynn will pay the carrier. (Doc. #50-2, ¶ 6.)

In Sowell's experience, it is uncommon for a shipper to prevent the driver from viewing or inspecting the loaded cargo before the trailer doors are closed and sealed. (Id., ¶ 8.) When those instances occur, it is custom in the industry for the driver to note "shippers load and count," or words to that effect on the bill of lading. The driver will ordinarily also report this to Scotlynn. Neither occurred in this case. (Id.) Sowell also opines that extreme braking would cause the beef to tip as it did in this case. (Id., ¶¶ 13, 14.)

Finally, Scotlynn submits the Affidavit of Kevin Kollker, Scotlynn's Director of Operations, who also states that extreme braking caused the damage at issue in this case. (Doc. #50-3, ¶ 6.)

**A. Motion to Strike**

Defendant moves to strike the Affidavits of Miller and Sowell, because they were not previously disclosed as witnesses in its mandatory initial disclosures, in violation of Federal Rule of Civil Procedure 26(a) and (e). With regard to Sowell, defendant argues that Scotlynn waited more than two months after the due date for disclosures had passed and after Titan filed its motion for summary judgment to disclose him. With regard to Miller, Scotlynn's disclosure only disclosed "unknown employees of Cargill", but it did not disclose that any unknown employees would be offering expert testimony surrounding what circumstances are

necessary to cause damage to the beef.  Instead, Scotlynn only disclosed that unknown employees would have "knowledge regarding the company's policies and procedures for its suppliers loading tractor trailers in September of 2016; and circumstances surrounding the loss of the load that is the subject of this lawsuit."

Scotlynn responds that its initial disclosures stated that they could be supplemented.  Additionally, discovery in this case does not close until January and Titan filed its Motion for Summary Judgment five and a half months before the close of discovery, prior to the parties conducting any discovery at all.  Scotlynn argues that many of the facts that Titan asserts are undisputed have not been adequately developed through discovery and requests that the Court defer a ruling on summary judgment until discovery has occurred pursuant to Federal Rule 56(d).  In support, Scotlynn's counsel submitted her Affidavit that details the facts that will be sought through discovery and how they are expected to create issues of material fact.  (Doc. #50-4.)

Federal Rule 26 requires the parties to disclose the names of all people likely to have discoverable information and a copy of all documents the party may use to support its claim.  Fed. R. Civ. P. 26(a)(1) (A)-(B).  The rule does not require disclosure of documents or the names of people that will be used "solely for impeachment."  Id.  If a party fails to provide information or

identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c); Murdick v. Catalina Marketing Corp., 496 F. Supp. 2d 1337, 1347 (M.D. Fla. 2007) (citation omitted).

Federal Rule 37(c)(1) provides that the Court can strike Scotlynn's references to the evidence and can prevent Scotlynn from relying on the undisclosed evidence in a motion or at trial; however, exclusion is not mandatory. Rule 37(c)(1) provides that instead of sanctioning a party by excluding evidence, the Court may impose other appropriate sanctions. Those sanctions include awarding, upon motion, reasonable expenses and attorney's fees incurred because of the discovery violation. Fed. R. Civ. P 37(c)(1)(A). See also Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc., 389 F.3d 1339, 1348–49 (11th Cir. 2004).

The Eleventh Circuit considers three factors when reviewing a district court's decision to exclude previously undisclosed evidence under Rule 37: (1) the importance of the evidence; (2) the reason for the party's failure to disclose the evidence earlier; and (3) the prejudice to the opposing party if the evidence is considered. Bearint, 389 F.3d at 1353; Cooley v. Great S. Wood Preserving, 138 F. App'x 149, 160-61 (11th Cir. 2005).

The Court finds that the Motion to Strike is due to be denied because the reason provided by Scotlynn for its failure to disclose the evidence earlier is well taken. Scotlynn states that when it drafted the Rule 26 disclosures Scotlynn did not have the Carrier Confirmation Sheet or any information that would lead her to conclude that Mr. Sowell would have discoverable information with any bearing on the claims or defenses. With regard to Mr. Miller, Scotlynn included an "unknown representative of Cargill" as a witness. Once Scotlynn conducted investigation of the evidence presented by Titan in support of summary judgment, the additional evidence and witnesses came to light. Scotlynn acknowledges that it should have supplemented its Rule 26 disclosures at that time, but that discovery would still need to be conducted in any event and there is still ample time to do so. Federal Rule 26(e) requires supplementation in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or correct. Given that discovery does not close until January 2020 and that Titan has the opportunity to confront the evidence, the Court will not strike the Miller and Sowell Affidavits.[1]

---

[1] However, the Court is making no determination at this time as to the admissibility of the Affidavits.

**B. Summary Judgment**

Titan requests that the Court find summary judgment in its favor because it did not cause any of the damages claimed and is therefore exempted from liability, relying on the driver's Affidavit. However, as outlined above, a dispute of material fact clearly exists as to the manner in which the cargo was loaded and what occurred during the transport. Even so, defendant argues that it has provided direct evidence from its driver that he took no part in securing the load and that he handled the truck carefully and accelerated and braked without any unusual incidents or harsh turns (Doc. #46-1, ¶ 10), and plaintiff has offered nothing in response except circumstantial evidence. However, "[w]here the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the non-movant's claim rests." Mize v. Jefferson City Bd. of Educ., 93 F.3d 39, 743 (11th Cir. 1996). The Court does not reach such a conclusion here as a reasonable jury could infer from the damage that extreme braking played a role based on the photographs of the damage that plaintiff submitted in opposition to summary judgment (Doc. #50-1, pp. 4-11). See Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.") And on summary judgment, all

reasonable inferences must be drawn in favor of the non-moving party.

   **C. Preemption**

   Defendant further argues that Count I for contractual indemnity is preempted by the Carmack Amendment. State law claims like a breach of the contract between the broker and carrier for "failures in the transportation and delivery goods" are generally preempted by the Carmack Amendment. Smith v. UPS, 296 F.3d 1244, 1246 (11th Cir. 2002). "In other words, separate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment." Id. at 1249. Scotlynn argues that preemption does not apply because the Agreement between Titan and Scotlynn was not for transportation of a specific item of freight, but was governed by the parties' ongoing business relationship and extended beyond any particular shipment of goods. In this regard, Scotlynn points out that the allegations in the Amended Complaint state that Scotlynn seeks indemnification for the damages it already paid to its customer, Cargill, provided for by Paragraph 12(c) of the Agreement.

   Here, it is clear that plaintiff's indemnification claim arises from defendant's failure to transport and deliver the goods in accordance with the Agreement; plaintiff has not alleged any conduct that is separate and distinct from defendant's failure to transport and deliver their possessions. Although Count I is

titled "indemnification," plaintiff alleges that Titan has failed to pay Scotlynn as required by Paragraph 12(c) of the Agreement, which the failure to pay would constitute a breach of the Agreement. The Eleventh Circuit has noted that the Supreme Court has described the preemptive effect of the Carmack Amendment very broadly and preempts breach of contract claims where the allegations concern a carrier's failure to provide transportation and delivery services. See Smith, 296 F.3d at 1249. Thus, to the extent that plaintiff seeks $89,832.68 in damages under the Agreement, the claim is preempted.

However, Scotlynn notes that the Eleventh Circuit has excluded an intermediary's contract-based indemnity claim for attorney's fees and costs from the preemptive effect of the Carmack Amendment. UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc., 750 F.3d 1292, 1294 (11th Cir. 2014) ("As the Supreme Court has held, attorney's fees do not enlarge or limit the responsibilities of the carrier for loss of property. Nor does a claim for attorney's fees pose an obstacle to the accomplishment of the Amendment's purpose."). Therefore, plaintiff seeks leave to amend Count I to limit the recovery sought to attorney's fees and costs in accordance with Paragraphs 12 and 22 of the Agreement. In accordance with Megatrux, the Court will allow plaintiff to amend Count I to limit recovery to attorney's fees and costs.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant's Motion for Summary Judgment (Doc. #46) is **GRANTED IN PART AND DENIED IN PART** to the extent that summary judgment is granted as to Count I with leave to amend and denied as to Count III. Plaintiff may file a Second Amended Complaint in accordance with this Opinion and Order within **FOURTEEN (14) DAYS**.

2. Defendant's Motion to Strike (Doc. #54) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __25th__ day of October, 2019.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record