UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTLYNN USA DIVISION, INC.,

       Plaintiff,

v.                                 Case No:   2:18-cv-521-FtM-32NPM

TITAN TRANS CORPORATION,

       Defendant.

_____

**ORDER**

Before the Court is Plaintiff's Motion to Compel Discovery (Doc. 68). Plaintiff Scotlynn USA Division requests the Court compel Defendant Titan Trans Corporation to produce unredacted documents with Bates Nos. 94-128. (*Id.*, p. 3). Plaintiff argues Titan asserted the work-product protection for these documents, but did not meet the burden of showing this protection applies. (*Id.*). Titan filed a Response, arguing it properly asserted the work-product protection. (Doc. 69). For the reasons below, the Court grants the motion to compel.

**BACKGROUND**

Scotlynn alleges it contracted with Titan, a common carrier, to transport freight by truck to various areas throughout the country. (Doc. 62, ¶¶ 5-6). The parties executed a contract entitled "Property Broker/Carrier Agreement." (*Id.*, ¶ 7). On September 21, 2016,[1] and on behalf of its client FPL Food, Scotlynn hired Titan to transport 21 boxes containing

---

[1] The second amended complaint (Doc. 62) reflects the date of this transaction as September 21, 2014, but based on the exhibits to the instant motion and response, it appears the events occurred in 2016. (Doc. 68-8, pp. 1-2; Doc. 69-1, p. 1).

42,147 pounds of beef from Augusta, Georgia to Butler, Wisconsin. (*Id.*, ¶ 8). Upon arrival in Wisconsin, it was discovered the boxes of beef had tipped over while in transit, and the receiver, Cargill, rejected the load in its entirety. (*Id.*, ¶ 10).

What happens next is central to the issues raised in the motion. On September 27, 2016, Scotlynn sent Titan a "Final Claim Notice." (Doc. 69-1, p. 1). The next day, Titan reported the loss of the load to its insurer, Lancer Insurance Company. (Doc. 68, p. 2). And on September 30, 2016, Lancer Insurance sent a "Cargo Mitigation Letter" to Scotlynn with a copy to Titan as its insured. (Doc. 68-8, p. 5). On November 8, 2016, Lancer Insurance sent Scotlynn and Cargill (the designated recipient that had refused delivery) an "Urgent 2nd Request," explaining who must show damage and who must submit all loss or damage paperwork for Lancer's review. (Doc. 68-6, p. 2). As Lancer represented in this request, additional documentation was needed "to complete our investigation, review and eval of this incident. Please be advised that the current status of this file is the load investigation is underway and as soon as this investigation is complete Lancer will be in contact with you." (*Id.*).

Nearly six months later, on April 27, 2017, Lancer Insurance sent Scotlynn's client, FPL Food, a letter reflecting it had investigated the claim, concluded the boxes "merely shifted" during transport because there was no bracing or airbags to hold the pallets in place, and since Titan was not allowed on the dock while the tractor trailer was loaded, the claimed loss was apparently due to FPL Food's error. (Doc. 68-2, p. 1). Lancer Insurance also informed FPL Food it was Cargill's duty to "take back this load" and if FPL was claiming a total loss, it was required to have lab testing done on the load, which did not occur. (*Id.*).

Lancer Insurance had previously sent a salvage check for $4,636.17 to Scotlynn, but Scotlynn returned the check. (*Id.*). Lancer Insurance enclosed a salvage check in the same amount with the April 27 letter to FPL Food. (*Id.*). Lancer Insurance stated, "[a]t this time, Lancer Insurance Company will make no further payments in this matter." (*Id.*). FPL Food filed a claim against Scotlynn for $89,823.68, which Scotlynn paid. (Doc 62, ¶ 11). Scotlynn now seeks to recover the damages it suffered due to Titan's alleged mishandling of the cargo. (Id., ¶ 12).

**DISCUSSION**

Scotlynn argues Titan's privilege log is inadequate because it: (1) does not provide adequate descriptions of the documents; (2) does not identify the individuals listed in the privilege log; and (3) does not support the contention that Titan anticipated litigation on September 30, 2016 such that all documents from that date forward were prepared in anticipation of litigation and are protected under the work-product doctrine. (Doc. 68, pp. 6-8). The Court agrees on both fronts.

*The Privilege Log*

The Middle District Discovery Handbook provides guidance on the content of a privilege log. As to the description of a document—unless doing so would result in the disclosure of protected information—the privilege log should provide an appropriate date for the document, the identity of its author(s), the purpose for which the document was created or transmitted, the subject of the document, the identity of the addressee(s), and the identity of all recipients. Middle District Discovery (2015) at 20-21.

But Titan's privilege log does not sufficiently identify either the authors or the recipients of the documents. According to the Middle District Discovery Handbook, the

privilege log should contain the address, job title, and employer of anyone who sent or received a copy of the document, and include the relationship to the author, addressee, or any other recipient. *Id.* at 21. Here, the November 4, 2019 Privilege Log contains the names of the individual senders, composers, and recipients, but does not identify their employer, their position, and the relationship between any of these individuals. (Doc. 68-5 , pp. 1-4).[2] The Court therefore will require Titan to supplement its privilege log to include this information.

*The Anticipation-of-Litigation Date*

Scotlynn argues Titan does not support its contention that the date it and its insurer anticipated litigation was September 30, 2016. (Doc. 68, p. 7). Scotlynn asserts September 30, 2016 is just four days after the parties learned the shipper (FPL) would not accept return of the beef, and just two days after Titan reported the claim to its insurer. (*Id.*, pp. 7-8). Scotlynn further argues the affidavit in support of the privilege log contains no information as to why Lancer Insurance Company's Senior Claims Examiner concluded he anticipated litigation on September 30, 2016. (Doc. 68, p. 8; Doc. 68-7, pp. 1-2).

Titan argues its insurer reasonably anticipated litigation on September 30, 2016 when, purportedly due to Scotlynn's failure to comply with regulations, the insurer sent

---

[2] When Titan further identifies the senders and recipients of the listed emails, it will find that in at least in one instance, a Scotlynn employee was copied and so no privilege or protection would apply. (*See* Doc. 68-5, p. 1, September 30, 2016, Titan 000094-000104 email copies to "Rsowell").

the Cargo Mitigation Letter. (Doc. 69, p. 5).[3] Specifically, the claims examiner concluded: "Based on this refusal to follow the Federal regulations outlined in Lancer Insurance's discussions with Scotlynn's representative, Lancer Insurance anticipated litigation and issued a Cargo Mitigation Letter to Scotlynn on September 30, 2016 at 10:39am EST." (Doc. 68-7, p. 2). Thus, Titan contends (with some notable hedging), "the mitigation letter was a protective measure sent in anticipation of a *claim* or litigation." (Doc. 69, p. 6 (emphasis added)).

The work-product protection codified in Rule 26(b)(3)(A) is governed by federal law in diversity cases such as this one. *Rahmings v. Essary*, No. 2:10-CV-716-FTM-29DNF, 2011 WL 13141665, *2 (M.D. Fla. Aug. 29, 2011) (citations omitted). Pursuant to Rule 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The purpose of this protection is to shield an attorney's trial preparation materials from discovery, unless "'the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Rahmings*, 2011 WL 13141665, at *2 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). But even then, the Court must "protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

---

[3] Although Titan hangs its hat on the transmission of the Cargo Mitigation Letter as the date Lancer Insurance anticipated litigation, it did not attach this mitigation letter to its opposition and does indicate it is otherwise in the record.

Rule 26(b)(3)(A), however, does not protect against documents prepared in the ordinary course of business. *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 698 (S.D. Fla. 2008). "Regrettably, in the insurance context, the boundary between [documents prepared in the ordinary course of business and documents prepared in anticipation of litigation] is not always clear because an insurance company investigates claims in the ordinary course of its business." *1550 Brickell Assocs.*, 253 F.R.D. at 698.

Generally, the burden of proof is on the party claiming the work-product protection. *Judith Redden Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 13-CV-81017, 2014 WL 12461357, *2 (S.D. Fla. Aug. 26, 2014). And in the insurance context, "there is a rebuttable presumption that documents prepared prior to a claim's denial were not created in anticipation of litigation, and conversely, those created after were." *Id.* An insurance carrier may rebut this presumption by "'specific evidentiary proof of objective facts, that a reasonable anticipation of litigation existed when the document was produced.'" *Id.* (quoting *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 697 (S.D. Fla. 2007)). Courts determine on a case-by-case basis whether a party has made this showing. *Id.* "But generally, 'the insurer must demonstrate the connection to possible litigation concretely enough to assure a court that it is not simply trying to immunize from discovery its routine claims processing material.'" *Id.* (quoting *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 695, 698 (S.D. Fla. 2010)). Courts have generally found the relevant date should be the date the insurer definitively decided to deny coverage. *Id.*

Here, it appears the insurer definitively denied coverage when it sent its denial notice to Scotlynn's client, FPL Food, on April 27, 2017. And so there is a rebuttable

presumption that documents prepared before that event were not prepared in anticipation of litigation. Titan has not adequately rebutted this presumption.

The principal evidence Titan produced in support of its position is the Affidavit of Lancer Insurance's Senior Claims Examiner, Monroe Moore, who states that based on Scotlynn's refusal to follow Federal regulations, Lancer Insurance anticipated litigation as of September 30, 2016, the date of the Cargo Mitigation Letter to Scotlynn. (Doc. 69-2, pp. 1-2). But Titan had contacted Lancer Insurance only two days before, on September 28, 2016 about this claim, allowing insufficient time to complete even a preliminary investigation. (Doc. 69, p. 2). And on November 8, 2016, Lancer sent the Urgent 2nd Request representing it continued to investigate the claim and that as soon as its investigation was complete, Lancer Insurance would contact Scotlynn and Cargill. (Doc. 68-6, p. 2). The language of this document demonstrates Lancer Insurance was continuing to investigate the claim after September 30, 2016.

Furthermore, Lancer Insurance sent a final notice denying the claim to FPL Food on April 27, 2017. (Doc. 68-2, p. 1). From the language of this claim-denial letter, Lancer Insurance had reviewed the circumstances, examined photos sent by FPL Food, investigated whether Titan or FPL Food loaded the cargo, considered who was responsible under federal law, and concluded that at most Lancer Insurance would pay for the salvage of the load and make no further payments. (*Id.*). This retelling of Lancer's apparently comprehensive investigation into whether fault, from its perspective, lied with FPL Food, Cargill, Scotlynn or Titan, undermines Titan's ability to "concretely" connect the Cargo Mitigation Letter to possible litigation such that the Court would be assured that

it is not simply withholding documents to shield them from discovery. *Milinazzo*, 247 F.R.D. at 697.

The Court finds Titan has not overcome the rebuttable presumption that documents prepared before its insurer's definitive denial of the claim against the insurance policy were created in anticipation of litigation. Rather, from the submissions provided, documents generated before the transmission of the claim denial letter were created in the ordinary course of business to investigate the insurance claim. Based on the parties' submissions, the Court finds Lancer Insurance did not reasonably anticipate litigation prior to denying the claim, and all documents prepared by Lancer Insurance before the transmittal of the of the April 27, 2017 claim-denial letter are not entitled to work-product protection.

*The Bates Nos. 154 and 155 Issue*

Finally, Scotlynn represents it received an *unredacted* document bates-stamped No. 154 that is listed in the privilege log as allegedly protected by the work-product protection, and a redacted document bates-stamped No. 155 that *is not* listed in the privilege log. When amending the privilege log consistent with the ruling made in this order, Titan must clarify which document it meant to protect by the work-product protection.

Accordingly, it is hereby **ORDERED**:

(1)    The Motion to Compel Discovery (Doc. 68) is **GRANTED**.

(2)    By June 19, 2020, Titan will furnish an amended privilege log to Scotlynn that includes more detailed information as set forth above.

(3)     By June 19, 2020, Titan will produce all documents created before the transmission of the April 27, 2017 claim-denial letter, withheld based on the work-product protection, unless another privilege applies.

(4)     By June 19, 2020, the parties will confer and resolve the Bates Nos. 154, 155 issue.

**DONE** and **ORDERED** in Fort Myers, Florida on June 11, 2020.

_Nicholas P. Mizell_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE