IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT FLORIDA
FORT MYERS DIVISION

SCOTLYNN USA DIVISION, INC.,

    Plaintiff,

v.

TITAN TRANS CORPORATION,

    Defendant.    /

CASE NO.:
2:18-CV-521-Ft.M-JLB-NPM

## **DEFENDANT'S TRIAL BRIEF**

Scotlynn USA Division, Inc. ("Scotlynn") cannot meet its burden of proof to establish a prima facie claim under the Carmack Amendment to the Interstate Commerce Act, 49 USC § 14706 *et seq.* ("Carmack Amendment") because it cannot show any actual loss (in whole or in part) to the beef (Count II). In a rejection of convenience, Scotlynn's customer, Cargill, declared that the shifted beef was "damaged" and rejected the entire load, purchased for nearly $90,000. Cargill's singular cited reason for rejecting the beef was that it had shifted. This is not enough to prove Carmack Amendment damages.

Scotlynn further claims attorneys' fees under its broker-carrier agreement with Titan Trans Corporation ("Titan"), but its Count I identifies no breaching conduct or claim against Titan separate and apart from its Carmack Amendment claim. Its fee claim is preempted and fails. Titan, however, is entitled to fees under the fee shifting statute at Fla. Stat. 57.105(7).

1

1. **Count II: Scotlynn Cannot Prove Its Prima Facie Case**

To prove Count II, Scotlynn's primary claim under the Carmack Amendment, Scotlynn must show (1) the goods were delivered to the carrier in good condition, (2) the goods were damaged during transit, and (3) a specified amount of damages resulted. *AIG Uruguay Compania de Seguros SA v. AAA Cooper Trans.*, 334 F.3d 997 (11th Cir. 2003). In other words, Scotlynn must show actual damage and its extent.

    A.  <u>Scotlynn Does Not Show that Shifted Beef Is Damaged Beef</u>

Scotlynn does not show that the shifted beef was actually damaged. "There must be evidence that the contents were in fact damaged…." *Ryder Truck Lines, Inc. v. Groff Industries, Inc.*, 263 So.2d 599, 601 (Fla. 3d DCA 1972); *see also Fuente Cigar, Ltd. v. Roadway Exp., Inc.*, 961 F.2d 1558, 1561 (11th Cir. 1992) (noting proof of damages).

***Shifted beef is not damaged beef.*** Scotlynn provides no USDA inspection or report from the receiving dock detailing any damage. On the contrary, Cargill's emails to Scotlynn only say the load was shifted. [J43] The only eight photographs do not show actual damage. [J33-41] Many of Scotlynn's witnesses testified they believe the cardboard combos were wet— only to realize that the "wet" areas were shadows. The witnesses, all secondhand, guess as to damage and identify no specific instance of damage or contamination. Titan's owner, Walter Borawski, is the only firsthand witness

of the beef after rejection, and he assisted in transloading the beef and observed the beef contained within the intact plastic liners. Importantly, the movement was without incident or any visible damage to the beef.

Scotlynn cites to the Food Safety Modernization Act ("FSMA") as a reason why it could reject this beef as "damaged"—but the FSMA is not a claims statute, nor does Scotlynn offer evidence that the condition of the beef was altered or contaminated. Scotlynn must prove that the beef was damaged, exposed, or somehow altered to run afoul of FSMA and prove damages.

### B. Scotlynn Does Not Show How Much Beef Was Damaged

Scotlynn also does not show how much of the shifted beef, if any, it claims was damaged. Even if the shifted beef was somehow damaged, not all the beef was shifted. Scotlynn makes no attempt to identify the amount of damaged beef upon arrival because its customer, Cargill, rejected the full truckload. Under the Carmack Amendment, a party may recover for "actual loss or injury," which is "ordinarily measured by any reduction in market value at the place of destination." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1286 (11th Cir. 2014), citing *Chicago, M. & St. P. Ry. Co. v. McCaull–Dinsmore Co.,* 253 U.S. 97 (1920); 49 USC § 14706(a)(1); *see also United Steel & Strip Corp. v. Monex Corp.*, 310 So. 2d 339, 342 (Fla. 3d DCA 1975) (finding no evidence of damages because the plaintiff did not show what portion of the goods were received in bad condition).

That "reduction in market value" in this case is unprovable because Cargill and Scotlynn never assessed any degradation to the beef itself or partial loss or damage upon arrival. The salvage transload evidences that the shifted beef could be moved. Visible in the few photos presented by Scotlynn is at least one combo standing straight on a pallet. [J38] Mr. Borwaski's testimony will establish that almost all the combos were removed by forklift during salvage. He will confirm the photographs, which show plastic bulging from two combos (not alone damage), and testify firsthand how the beef was moved manually. Scotlynn erroneously treats this as an all or nothing case.

C. <u>AD-9: Scotlynn Failed to Mitigate Damages</u>

Cargill and Scotlynn had a duty to mitigate damage to the beef. If hypothetically 10% of the shifted beef was actually damaged, Cargill should not have rejected whole truck. "[A] shipper is under a duty to take reasonable steps to reduce the amount of its loss." *Land O'Lakes, Inc. v. Superior Serv. Transp of Wis., Inc.*, 500 F. Supp. 2d 1150, 1156 (E.D. Wis. 2007), citing *Paper Magic Group, Inc. v. J.B. Hunt Transport, Inc.,* 318 F.3d 458, 461 (3d Cir.2003).

Further, Scotlynn should have made all efforts to return the beef quickly. Cargill's decision to dump all the beef rather than return it to FPL was only made after Scotlynn delayed over the weekend. Scotlynn made no efforts to get the beef back sooner, and that caused Cargill to order disposal to a salvager.

## 2. ADs 2, 7, 10, and 12: Titan Is Not Liable Under an Exception to the Carmack Amendment

Irrespective of damages, Titan challenges liability. Under the Carmack Amendment, motor carriers are not liable for loss or damage that occurred because of "acts of the shipper." *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 141 (1964). FPL packaged and loaded the beef by forklift onto the trailer, which it then sealed. This is "shipper load and count" where, under 49 C.F.R. §392.9(b)(4), the carrier is not liable because the "driver of a sealed commercial motor vehicle … has been ordered not to open it to inspect its cargo or … a commercial motor vehicle … has been loaded in a manner that makes inspection of its cargo impracticable." In such circumstances, the carrier may avoid liability if it can show it was free from negligence and the damage was attributable to an act of the shipper. *Missouri Pac. R. Co.*, 377 U.S. at 137-138.

All Cargill meat loads are shipper load and count. [J69] The shipper or cargo owner, not the motor carrier, is liable for damage that occurs where the shipper takes responsibility for loading the shipment and problems with loading are "latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier." *United States v. Savage Truck Line*, 209 F.2d 442, 445 (4th Cir. 1953), *cert denied*, 347 U.S. 952 (1954); 49 CFR § 392.9(b). FPL loaded the beef at its dock while the driver waited in the cab of the truck. The driver observed the loaded beef only when he helped shut the

5

doors. He could not have further inspected or changed the packaging of the beef. FPL confirmed that the driver was not present during and could not have easily entered the trailer after loading. [Jerry Lowe/FPL testimony] During transit, no unusual events occurred. Even if there was "hard braking" that caused the shifted beef, that a driver may have had to brake suddenly is not proof of negligence and may be required in the normal course of transit.

### 3. AD 7: Scotlynn Is Barred from Recovery Under 49 USC § 14916

Scotlynn is barred from all relief because it violated 49 USC § 14916 by knowingly participating in an unlawfully brokered shipment. When Scotlynn brokered the load of beef to Titan, Scotlynn did not have a brokering contract with Cargill. Rather, the Scotlynn-Cargill contract was between non-party Scotlynn Transport LLC, Scotlynn's related motor carrier entity. Cargill tendered the subject load of beef to Scotlynn Transport LLC pursuant to the terms of the Cargill-Scotlynn Transport LLC contract. Scotlynn Transport LLC then illegally brokered the subject load to Scotlynn, who then brokered it to Titan (unbeknownst to Titan). Scotlynn Transport LLC does *not* have brokerage authority with the FMCSA. Scotlynn, as a related entity working with Scotlynn Transport LLC, knew that Scotlynn Transport LLC was unlawfully brokering. Cargill has since terminated its relationship with Scotlynn after learning of the prohibited brokering. [Miller testimony]

49 USC § 14916 makes the inside-brokering activity between Scotlynn Transport LLC and Scotlynn unlawful and subjects both entities to full liability of any subsequent damages or loss relating to the shipment. Under 49 USC § 14916(a) "a person may provide interstate brokerage services as a broker only if that person" is registered and in compliance with 49 USC § 13904 and has met the financial security requirements of 49 USC § 13906. Scotlynn Transport LLC has complied with neither, and Scotlynn was aware of this as its related entity. 49 USC § 14916(c)(2) explicitly makes "[a]ny person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of subsection (a)" liable to "the injured party for all valid claims incurred without regard to amount." Scotlynn, as a party who knowingly authorized and consented to the illegal brokering of the beef, is liable to Cargill for the loss. Scotlynn is also precluded from claiming the loss as to Titan, because absent the illegal brokering activity, Titan would not have carried the load. Scotlynn, as a knowing and consenting participant in the statutory violation, is responsible for all consequences which flow from its illegal brokering activity, and it cannot shift that liability to Titan who had no knowledge of the subject load's prohibited origin.[1]

---

[1] The provisions of 49 USC § 14916 are part of the Moving Ahead for Progress in the 21st Century Act (P.L. 112-141) ("MAP-21"), signed into law on July 6, 2012, and counsel can find no court analysis on point. Counsel relies on the language of the statute.

7

### 4. ADs 3, 4, and 5: Scotlynn Caused the Damage

The ultimate disposal of the beef to salvage instead of return to FPL was directly caused by Scotlynn's mismanagement. At no point after Cargill rejected the beef did Scotlynn inform Titan that the beef had a short shelf life. Titan had no drivers to return the beef until Monday, September 27 (3 days after rejection), and Scotlynn agreed to this, issuing a rate confirmation for departure on Monday [J62, J63]. Scotlynn did not act with urgency to return the beef, and did not appear to know to do so [e.g., J88]. The phone records of Richie Sowell show his inactivity over the weekend. [J49]

Titan stored the beef in its refrigerated trailer while awaiting instruction from Scotlynn and availability of a driver. Over the weekend, Scotlynn did not tell Cargill about the delay. On Monday, September 26, Cargill learned of the delay and ordered disposal of the beef. [J76] Titan's insurer found a salvager for animal feed, salvage value of $4,626.17. [Stipulated] To avoid the damage of spoiled beef, Scotlynn could have acted promptly to ensure the wrongfully rejected beef was returned to FPL before spoiling (and informed Titan of the urgency). Scotlynn's delay caused the spoilation damage.

### 5. Count I and AD 8: Scotlynn May Not Recover Attorneys' Fees

Scotlynn's claim for indemnification is preempted by the Carmack Amendment. This Court made the same determination against this same plaintiff for the same reason in a similar case. *See Scotlynn USA Div., Inc. v.*

8

*Cold Ground Transp., LLC*, No. 2:15-CV-152, 2016 WL 6066682, at *3 (M.D. Fla. Oct. 14, 2016). There, the Court held Scotlynn could not recover fees on its contract claim because its fee request, although contractual, is based "on the very instance that invokes liability under the Carmack Amendment." *Id*.

The same holds true today and aligns with the reasoning of the Eleventh Circuit in *UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1292 (11th Cir. 2014). When this Court allowed Scotlynn to amend its indemnity claim to be limited to fees and costs, it followed the reasoning of *Megatrux*, noting that Scotlynn must allege separate and distinct **conduct** to succeed in its indemnity claim. [Dkt. 61 at 11] In *Megatrux*, the Eleventh Circuit stated that the "Carmack Amendment embraces all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation." *Id*. (quoting *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1249 (11th Cir. 2002)). It emphasized that "**separate and distinct conduct rather than injury** must exist for a claim to fall outside the preemptive scope of the Carmack Amendment." *Id*. (quoting *Smith*, 296 F.3d at 1249) (internal quotation marks omitted) (emphasis supplied).

Scotlynn's amended Count I now seeks "indemnity" only as to "costs, expenses and attorney fees in connection with enforcing its rights against the [sic] Titan under the Agreement." [Dkt. 62 ¶ 17]. The rights it attempts to enforce, however, are for indemnity (standing in the shoes of the shipper) for

9

damage to the beef under the Carmack Amendment. It does not, as an intermediary, identify any *conduct separate and distinct* from the underlying Carmack claim. In contrast with Scotlynn's claim, the intermediary plaintiff in *Megatrux* sought indemnification from the carrier (Megatrux) for breach of the UPS-Megatrux agreement by *subcontracting to another carrier*; that breach was separate and distinct conduct from the loss of cargo. 750 F.3d at 1294-95. Distinct from *Megatrux,* Scotlynn has failed to allege any breach by Titan separate and distinct from damage to the cargo, and as such, the indemnity claim for fees cannot stand.

Titan is entitled to fees under Florida Statutes § 57.105(7), a fee shifting statute that entitles reasonable attorneys' fees to a party defending a contractual fee claim that succeeds in its defense. The party seeking fees must prove (1) the existence of a contract that contains an attorneys' fee provision, and (2) that the party prevailed in the underlying action. *See Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953 (Fla. 2020). Titan as the successful party in the action on the contract is still entitled fees.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: April 12, 2021 | /s/ Kristen M. J. Johnson |
|  | Kristen M. J. Johnson, Esq. |
|  | Florida Bar No. 1005180 |
|  | Elena P. Adang, Esq. |
|  | Florida Bar No. 119049 |
|  | TAYLOR & ASSOCIATES, |
|  | ATTORNEYS AT LAW, P.L. |
|  | 20 3rd Street SW, Suite 209 |

        Winter Haven, FL 33880
        (863) 875-6950 (tel)
        (863) 875-6955 (fax)
        kjohnson@taylorlawpl.com
        eadang@taylorlawpl.com
        efiling@taylorlawpl.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, I caused the foregoing document to be served upon the attorney(s) shown below via CM/ECF:

    Katy Koestner Esquivel, Esq.
    Moorings Professional Building
    2335 Tamiami Trail North, Suite 301-B
    Naples, FL 34103-4457
    Telephone: (239) 206-3731
    Facsimile: (239) 431-3942
    kke@esquivel-law.com

    Michael J. Connick
    CONNICK & ASSOCIATES CO., LPA
    301 Main St., Suite H
    Zanesville, OH 43701
    mconnick@MJConnick.com

        /s/ Kristen M.J. Johnson