UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **SCOTLYNN USA DIVISION, INC.,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **TITAN TRANS CORPORATION,** <br><br> **Defendant.** | **CASE NO. : 2:18-cv-00521-JLB-NPM** |

**PLAINTIFF'S BRIEF**

In accordance with this Court's Order Regarding Trial, Plaintiff Scotlynn USA Division, Inc. submits the instant trial brief.

**I.  Carmack Amendment  (Count II)**

The Carmack Amendment is a strict liability statute. When a shipper shows delivery of goods to a carrier in good condition or delivery in a damaged condition, there arises a prima facie presumption of liability.[1] Plaintiff Scotlynn will establish delivery of the beef to Titan in good condition through the bill of

---

[1] *Chesapeake & O. Ry. Co. v. A.F. Thompson Mfg. Co.*, 270 U.S. 416, 422–23, 46 S. Ct. 318, 70 L.Ed. 659 (1926); *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir.2003) (citing  Fine Foliage of Fla., Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1037 (11th Cir.1990)).

lading (J27), the testimony and actions of the driver, Boguslaw Zaranski, the testimony Jerry Lowe (FPL's shipping manager and corporate representative describing the process that the company uses for loading beef into tractor-trailers, the number of loads that FPL ships annually that are identical or nearly identical to this load), the testimony of Richie Sowell (describing his communications with Titan), ¶8 of the Agreement (J2 and J3) between Scotlynn and Titan, FPL's Standard Operating Procedures for Outbound Loads (J25) and its policies for outside carriers.(J24)

Scotlynn will prove that the beef arrived in damaged condition because it not only shifted in transit but was also adulterated. While there is a factual dispute whether the beef was damaged, it speaks volumes that Titan's insurer declined the invitation to sell the beef and assume all liability attendant to that sale. The reason for this is obvious – the risk of consuming contaminated beef. This follows the FDA Act, which states that the *mere possibility* of contamination renders food products "adulterated" under federal law, and prohibits introduction of the beef into the stream of commerce.[2] This is shown in the photographs of the load at the time of arrival (J33-J40) the notations on the bill of lading (J31), the claims (J60, J66, J71), the

---

[2] 21 U.S.C. §§331 and 342(a)(4); *Atl. Mut. Ins. Co., Inc. v. CSX Lines, L.L.C.*, 432 F.3d 428, 436 (2d Cir. 2005); *United States v. Gel Spice Co., Inc.*, 773 F.2d 427, 429 (2d Cir.1985).

testimony of Tamara Stegman (Cargill could not and would not accept this or any other load of tipped combos because of food safety concerns), the testimony of Jason Middleton, Richie Sowell, Jerry Lowe, Walter Borowski, and Reggie Davis.

Finally, Scotlynn will show that "the actual loss or injury to the property"[3] is $89,823.68, which is affirmed by ¶11 of the Agreement (J2, J3), the invoice issued by FPL to Cargill (J23), the debit (J96) and the credit (J89) memos issued by FPL, the claims (J60, J66, J71), as well as Check 048372 (J88) issued by Scotlynn to Cargill for this load. Cargill orally assigned the claim to Scotlynn, a fact memorialized in a written assignment. (J87)

## II.  Defenses to Liability Under the Carmack Amendment

### A. 49 C.F.R. §392.9(b)(4).

This regulation limits liability of (a) a driver of a sealed truck ordered not to open it to inspect its cargo or (b) to the driver of truck that has loaded in a manner that makes inspection of the cargo impracticable. While Titan will likely argue this exception applies here, it is not supported by the facts. The driver, Boguslaw Zaranski, remained in the cab of his truck at FPL while the beef was being loaded. When loading was complete, Mr. Zaranski drove the truck forward, and to exit the

---

[3] 49 U.S.C. §14706(a)(1).

cab of the truck. At that time, he admits that the trailer doors were not closed or sealed. Mr. Zaranski not only closed the doors to the trailer, but he had a chance to view the cargo and ensure that it was properly secured. Once the driver closed the doors, FPL sealed the trailer, gave the driver the seal number, the Bill of Lading in triplicate, and proceeded to the security gate, where FPL's security verified the seal number, the paperwork and allowed Mr. Zaranski to leave the FPL property and begin the drive to Wisconsin. This dovetails with Mr. Lowe and FPL's procedures for loading, sealing tractor trailers, and there is no reason to believe that FPL did not follow these same procedures in this single instance, particularly given it sells 30-35 loads of beef trim to Cargill *each week* in 2013 according to FPL's Antione Bernier. Inspection of this load was neither impractical or prohibited, and 49 C.F.R. §392.9(b)(4) is inapplicable.

Moreover, if the driver could not view or inspect the load before leaving FPL, he was obligated to make a notation to that effect on the Bill of Lading. The Agreement with Scotlynn requires this (¶8), and ordinarily carriers will write "shippers load and count", "SLC" or another notation suggesting that he did not see the cargo. This is corroborated by the testimony of Titan's owner, Walter Borowski, the deposition of Titan's dispatcher Pawel Run, along with Scotlynn's

Richie Sowell, Kevin Kollker and expert Michael Laws. Mr. Zaranski did not comply with this expectation.

### B.      Affirmative Defenses

Upon establishing a prima facie case under the Carmack Amendment, the burden of proof shifts to Titan to show that it was free from negligence <u>and</u> the damage was caused solely by (a) the act of God; (b) the public enemy; (c) the act of the shipper; (d) public authority; (e) or the inherent vice or nature of the goods. Each is encompassed in Titan's Affirmative Defenses, which are paraphrased below:

### 1.  Plaintiff's Standing.

This affirmative defense is unfounded. Cargill assigned the claim to Scotlynn in 2016, however this assignment does not appear to be written. In an abundance of caution, Scotlynn has obtained a written assignment from Cargill memorializing the September 2016 assignment. (J87)

### 2.  Titan's acts/omissions did not cause the loss or damages… which were otherwise not foreseeable.

The Carmack Amendment is effectively a strict liability claim, and this defense is legally immaterial, and lacks factual support.

### 3.  Acts of the shipper or other third parties

No evidence shows that any "third parties" caused the combos to domino. As for the alleged acts of the shipper, this will require the Court to weigh the credibility of not only the parties' experts, but also the opinions of Titan and its management versus those of Cargill, FPL, Scotlynn and others. FPL packages, stores and loads trucks of combos all day, every day, and in 2016, was sending over 30 loads to Cargill each week. FPL has an interest in ensuring that it properly loads the beef into the trailer, and to ensure that there is no reason that the beef is rejected upon arrival. FPL's experience shipping combos of beef should be given considerable deference, as this is its very business. Similarly, Cargill receives beef packed and loaded identically to this thousands of times each year. Although Titan would have this Court suspend the laws of physics in its consideration of what happened to this load of beef, FPL and Cargill each contend that the combos weigh a ton each, and do not shift absent extreme braking.

4. **The damage occurred while the cargo was in the care, custody, and/or control of Plaintiff's subrogor, the shipper, and/or third parties.**

This defense is nonsense. No evidence shows that the cargo was in the care of any third parties, or to suggest that the combos were tilted before they left FPL.

5. **Absence of Causation.**

The Carmack Amendment is effectively a strict liability claim, and

assumes that causation is many times difficult, if not impossible to prove. This defense fails as a matter of law.

### 6. Claims barred by the terms of service.

The terms of Titan's service are in the Agreement (J2 and J3) and in the Carrier Confirmation (J21). Neither includes any language barring this claim.

### 7. Defendant is entitled to all rights and defenses under the Carmack Amendment.

See §II.A. and §II.B.3.

### 8. Special or consequential damages are not recoverable under the terms of service.

See response to Affirmative Defense #6.

### 9. Failure to Mitigate.

While Titan claims that Scotlynn failed to mitigate, a careful review of the facts and the phone records of Richie Sowell and others reveal that this defense is meritless. (J32, J46, J48-J51, J53, J54, J57) Titan and the driver knew that the cargo was raw beef. It is common sense that raw beef has a finite shelf life. At 3:52pm EST on Friday, September 21, the driver texted photos of the load to Richie Sowell and informed him that Cargill was rejecting the load. Richie Sowell spoke with the driver again at 4:26 pm, while awaiting instructions from Cargill about what to do with the load. The driver's cell phone records reveal that he had zero inbound or

outbound calls after the 4:26 pm call with Mr. Sowell until Monday, September 26. The driver apparently turned off his phone, and so when Mr. Sowell received a call at 5:52 pm from Cargill instructing the driver to return the beef to FPL by the next day, it was impossible for anyone, including the dispatchers at Titan, to communicate these instructions to the driver. It is Titan's own actions that led to a failure to mitigate damages. Further, Mr. Sowell will testify that he has a financial incentive to avoid cargo claims and to make every effort to mitigate the loss. His efforts to mitigate the loss are clear from the phone records and from his text messages to his boss, Kevin Kollker, that night.

**10. Titan was not negligent.**

See Response to Affirmative Defense #5.

**11. Third parties caused the damage.**

See response to Affirmative Defense #4.

**12. Defendant exercised reasonable care and is not responsible for any loss resulting from an unavoidable event.**

See Response to Affirmative Defense #5.

### III. Indemnity Under the Property Broker Carrier Agreement (Count I)

Titan's resistance to the indemnity claim seems to ignore Judge Steele's ruling on Titan's premature Motion for Summary Judgment.[4] that relies on the Agreement. Under that Agreement, ¶22 provides:

> Carrier shall pay all costs, expenses and attorney fees which may be expended or incurred by Broker … in enforcing this Agreement … including but not limited … or in exercising any right or remedy of Broker or Broker's Customers against Carrier, or in any litigation incurred by Broker because of any act or omission of Carrier under this Agreement.

Scotlynn has incurred costs, expenses and attorney fees in connection with enforcing its rights against the Titan under the Agreement. The 11th Circuit has addressed this issue, holding that a "carrier that agrees to indemnify an intermediary for attorney's fees faces no more of an obligation than it has expressly chosen to assume."[5] To recover, Scotlynn has the burden of proving: (1) a breach

---

[4] Ct A Motion premised on the Affidavit of Boguslaw Zaranski (J123) and teems with perjurious statements.

[5] *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1294–95 (11th Cir.

of the indemnity contract; (2) the amount of the loss sustained; (3) the existence of the facts for which there was coverage; and (4) the reasonableness of the amount paid. Titan breached multiple provisions of the Agreement, leading to Scotlynn incurring legal fees and costs in connection with pursuing this case. Since there remain issues for the Court to determine in connection with this claim, Scotlynn requests leave to supplement the Brief with respect to the attorneys' fees and costs to be proven in connection with the indemnity claim.

Respectfully submitted on Monday, April 12, 2021.

**CONNICK & ASSOCIATES CO., L.P.A.**  **ESQUIVEL LAW, CHARTERED**

/s/Michael J. Connick
Michael J. Connick
*Admitted* Pro Hac Vice
Ohio Bar No. 0046624
301 Main St., Suite H
Zanesville, OH 43701
Tel: (216)924-2010
mconnick@MJConnick.com
*Co-Counsel for Plaintiff*

/s/Katy Koestner Esquivel
Katy Koestner Esquivel
Florida Bar No. 0159484
Moorings Professional Building
2335 Tamiami Trail North, Suite 301
Naples, FL 34103-4457
Telephone: (239)206-3731
Facsimile: (239)431-3942
kke@esquivel-law.com
*Attorneys for Plaintiff*

---

2014).

## **CERTIFICATE OF SERVICE**

I hereby certify that on Monday, April 12, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which served the foregoing upon all counsel of record.

/s/Katy Koestner Esquivel

Katy Koestner Esquivel