## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

SCOTLYNN USA DIVISION, INC.,

      Plaintiff,

v.                                           2:18-cv-521-JLB-NPM

TITAN TRANS CORPORATION,

      Defendant.

---

### REPORT AND RECOMMENDATION

Defendant Titan Trans Corporation prevailed on both the Carmack Amendment and indemnity claims in this action. Subsequently, the court found Titan entitled to an award of fees and nontaxable expenses under Florida Statute § 57.105(7) for prevailing on the indemnity claim.[1] Titan now moves the court to determine the amount of fees and non-taxable expenses to be awarded. (Doc. 180). Scotlynn objects to Titan's bill of costs (Doc. 183 at 18-19), so we take that up too.

Titan entered into two fee agreements for this matter. Up until September 11, 2020, Titan's insurer paid its attorneys negotiated rates. Those rates were set at $350 per hour for partners, $250-$295 per hour for associates, and $125 per hour for paralegals. After September 11, 2020, Titan's insurer agreed to pay a flat fee of

---

[1] This report assumes familiarity with the court's entitlement order (Docs. 171, 177) and the order disposing of Scotlynn's claims following the bench trial (Doc. 155).

$36,000 for all further representation.[2] The flat-fee arrangement contemplated that if Titan prevailed, its fee motion would seek its counsel's standard rates for the work performed during the flat-fee period. Those rates are $450 per hour for partners, $250-350 per hour for associates, and $125 per hour for paralegals. Titan seeks to recover fees consistent with the two agreements—that is, negotiated rates for work up to and including September 11, 2020, and standard rates for work thereafter.[3] In total, Titan seeks $323,244.48 in attorney's fees.

## I.    Attorney's Fees

Titan is entitled to a fee award under Florida law. Florida has largely adopted the federal lodestar approach for calculating reasonable attorney's fees. *See Joyce v. Federated Nat'l Ins. Co.*, 228 So. 3d 1122, 1126 (Fla. 2017). The lodestar figure is the product of a two-step, fact-intensive and case-specific inquiry, asking: (1) what would a lawyer in this division assess a paying client per hour to provide representation comparable to the legal skill, expertise and acumen supplied to the prevailing party in this particular case, and (2) how many hours would have been appropriate for the lawyer, practicing good billing judgment, to bill such a client for

---

[2] After a court-hosted settlement conference ended on June 11, 2020, with an impasse, September 11, 2020, became the deadline for the parties' *Daubert* motions. (Docs. 97, 107).

[3] The fact that Titan's counsel and its insurer switched to a $36,000 flat-fee arrangement for all services performed after September 11, 2020, does not preclude Titan from seeking a fee award for that time period based on reasonable hourly rates. *See First Baptist Church of Cape Coral, Fla., Inc. v. Compass Const., Inc.*, 115 So. 3d 978, 983 (Fla. 2013).

the claims or defenses entitled to an award? *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-553 (2010).[4] "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis, or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The court has "wide discretion in performing these calculations. . .." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

### a. Reasonable rates

Titan has failed to supply adequate information to confirm fair-market rates. *See Mraz v. I.C. Systems, Inc.*, No. 2:18-cv-254-FtM-38NPM, 2021 WL 4086147, *6 (M.D. Fla. Aug. 23, 2021) (noting that affidavits describing fees as reasonable do not offer any evidence about rates billed and paid in similar lawsuits and therefore provide no evidentiary support for an award). But the fact that Titan's fee application is based, in part, on fees paid by its insurer—a presumably sophisticated consumer of legal services—suggests that the negotiated rates are in line with the market for

---

[4] Under Florida law, the following criteria help inform the lodestar analysis: (1) the time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. *See Joyce*, 228 So. 3d at 1126 (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985)).

the services performed while those rates applied.[5]  And the request for slightly higher rates for work performed after the filing of the parties' *Daubert* motions is commensurate with the additional skill and expertise that became necessary to present evidence and arguments at trial.

At bottom, the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Mraz*, 2021 WL 4086147 at *5 (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Having reviewed the declarations supplied by Titan (for what they are worth), the attorneys' biographies, the skill and talent displayed in this action, and the other relevant factors, and informed by the court's own knowledge and experience, the rates sought by Titan are reasonable.

**b.    Reasonable hours**

"Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client*." In re Home Depot Inc*., 931 F.3d 1065, 1087 (11th Cir. 2019). Since it is "the duty of the courts to see that excessive fees and expenses are not awarded," the fee applicant's timesheets must be viewed from the perspective of

---

[5] There is really no dispute about the reasonableness of the negotiated rates. They fall within the range of reasonableness discussed in the affidavit supplied by Scotlynn. (Doc. 183-4 at 3-4).

a cost-sensitive client, and if such a client would refuse to authorize the work or balk at certain entries, and justifiably so, then they should not be awarded. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). In other words, fee applicants must exercise "billing judgment" and exclude hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *Id*. (quoting *Norman*, 836 F.2d at 1301 (emphasis in original)). Upon an exhaustive review of the docket and timesheets, a substantial reduction to the amount requested is warranted, and an across-the-board cut is the appropriate methodology for arriving at a just award.

***First***, the court must reduce Titan's hours to align them with the court's order granting them entitlement to fees. Here, Titan is only entitled to a fee award by operation of Florida Statute § 57.105(7). And that provision simply makes the parties' entitlement to attorney's fees reciprocal. On that score, even if Scotlynn prevailed on its Carmack Amendment claim at trial, the court would not have awarded it *any* attorney's fees because Scotlynn's indemnity claim was preempted. So, the court found Titan entitled to a limited fee award—an award only for "defending against Plaintiff's contract claims, obtaining its fees-and-expense award, and taxing its costs." (Docs. 171, 177). As for the rest of Titan's defense, the court found "Titan is not entitled to attorney's fees and costs on the Carmack Amendment

claim, **despite any overlap** in Scotlynn's various claims." (Doc. 177 at 9) (emphasis added).

The entitlement order is not only consistent with Florida Statute § 57.105(7), but also conforms with the general approach to fee awards. Ordinarily, a party must bear "its own attorneys' fees unless a contract or statute provides otherwise." *Price v. Tyler*, 890 So. 2d 246, 250 (Fla. 2004) (quotation omitted). And "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Rather, the court's goal is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). But contrary to these principles and the court's narrow entitlement order, Titan makes the broadest possible request for fees, costs, and non-taxable expenses.

This action began as a dispute over approximately $90,000 of beef. The Carmack Amendment claim was at its core. The indemnity claim that ultimately proceeded through trial merely served as a potential fee-shifting device. It did not otherwise change the scope of Titan's potential liability or implicate any other facts or evidence not already at issue by virtue of the Carmack Amendment claim. Proceeding as if the tail wags the dog, Titan nevertheless attempts to leverage its avoidance of Scotlynn's fee-shifting theory into an award for the entirety of its defense—$323,244.48 in fees (plus costs and non-taxable expenses).

But trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. The court should do both here. Most of Titan's arguments regarding the purportedly monolithic nature of its defense cut against, not in favor of, the requested award. They confirm that, even if Scotlynn had never made the strategic miscalculation of bringing the indemnity claim, Titan would have nonetheless incurred nearly all the fees sought. Moreover, Titan's arguments lose sight of the court's overarching duty when determining a fee award—to arrive at one that is reasonable.

Titan argued preemption as the primary attack against the indemnity claim.[6] This was a legal argument that did not require Titan to defend "on the *facts surrounding the alleged cargo loss*." (Doc. 180 at 17) (emphasis in original). And, other than that, the non-preemption defense to the indemnity claim could only have had a slight impact on the presentation of the defense during the bench trial (in the form of reminding the court that if the Carmack Amendment claim fails the indemnity claim does too for essentially the same reason). These marginal fractions of the suit simply cannot support the hundreds of thousands of dollars Titan now

---

[6] Titan makes much of the court's reasoning that the conduct regulated by the indemnity claim was not "separate and distinct" from the conduct regulated by the Carmack Amendment claim. But this meant that the indemnity claim stood in conflict with and was therefore preempted by the Carmack Amendment, and it says nothing about whether Titan's defenses to each claim were so bound up together that it should be able to extend fee-shifting into an area in which it would otherwise be unavailable. Indeed, the very nature of preemption counsels against such an extension.

seeks. Such an award would be inconsistent with the general unavailability of fee-shifting for Carmack Amendment claims, the reciprocal nature of Florida Statute § 57.105(7), the court's entitlement order, and the role the indemnity claim played in this action. In other words, it would be an improper windfall and unreasonable.[7]

**Second**, almost all the paralegal time claimed by Titan involves clerical work. The court may "only award fees for the work of a paralegal when the work is of a legal nature, traditionally performed by attorneys." *Fed. Trade Comm'n v. Life Mgmt. Servs. of Orange Cty., LLC*, No. 6:16-cv-982-ORL-41TBS, 2017 WL 2869535, *3 (M.D. Fla. June 12, 2017), *report and recommendation adopted*, 2017 WL 4877460 (Oct. 30, 2017) (collecting cases); *see also Youngblood v. Youngblood*, 91 So. 3d 190, 192 (Fla. 2d DCA 2012). Other paralegal entries involve block billing, so the court cannot discern the time spent on clerical versus compensable matters.

**Third**, Titan's timesheets include block billing and vague entries. Block billing and vague entries prevent the court from separating compensable and non-compensable hours. Moreover, some vague entries are substantial and prevent the court from engaging in meaningful review of the reasonableness of the hours sought. For example, tens of thousands of dollars are billed under broad descriptions such

---

[7] With indications that Scotlynn was willing, some seven months before trial, to settle for less than the approximately $90,000 in controversy (Doc. 180-4 at 17), it appears that Titan's proffered approach to the fee-shifting issue—that is, the view that it should recover not just the portion of its defense attributed to the issues unique to the contract claims, but to the issues already in play due to the Carmack Amendment claim as well—served as an impediment to settlement and incentivized further litigation. A view that the court should be loath to adopt.

as "trial preparation" or "prepare for trial." (180-2 at 24-31). The court does not doubt that Titan spent substantial time and resources preparing for trial, but inadequate descriptions (like those found throughout the timesheets) hamper the court's ability to determine whether the time is compensable and reasonable.

**Fourth**, the hours sought by Titan are excessive. Examples illustrate this point. Titan billed half an hour to review this:

| | |
|---|---|
| ● 31 | Case Reassigned to Unassigned Magistrate Judge. New case number: 2:18-cv-521-FtM-99UAM. Magistrate Judge Carol Mirando no longer assigned to the case. (LMF) (Entered: 01/30/2019) |

Titan also billed two and a half hours of paralegal and attorney time related to simply preparing its interested-persons disclosure. This task involves the completion of a template form on which Titan merely identifies the parties, their counsel, and Titan's insurer as persons interested in the outcome of the action. (Doc. 30). To cite a more troubling example, Titan logged over 120 hours related to the entitlement and reasonableness issues for this fee award. (Docs. 180-2 at 32-36; 187-1 at 49).[8] The court is not cherry picking, rather these examples illustrate a pattern found throughout Titan's timesheets on tasks both large and small.

**Fifth**, Titan's timesheets include various other discrete issues. For example, Titan repeatedly claims time for travel. *See Dish Network Serv. L.L.C. v. Myers*, 87

---

[8] Notably, at this point the billing practices of Titan's counsel were no longer constrained by a client that was paying by the hour. Rather, as mentioned previously, Titan's insurer had agreed to pay a flat rate of $36,000 for all work performed after September 11, 2020, which covered the bench trial, several months of pre-trial work, and all post-trial work.

So. 3d 72, 78 (Fla. 2d DCA 2012) ("In Florida, the longstanding rule is that an award of attorneys' fees should not include travel time 'without proof that a competent local attorney could not be obtained.'"). Titan also appears to claim hours for some erroneous entries. *See* Doc. 180-2 at 3 (erroneously referencing "Lancer's Combined Motions for Clarification and for Issuance of Written Opinion"); Doc. 180-2 at 21 (erroneously referencing "plaintiff's motion for summary judgment").

Several reductions urged by Scotlynn are not warranted. Scotlynn claims that Titan cannot recover fees incurred prior to the second-amended complaint because that is when it repackaged the indemnity claim that ultimately proceeded to trial. But Scotlynn brought its indemnity claim from the start. (Docs. 1 ¶¶ 14-16; 5 ¶¶ 14-16). The second-amended complaint only narrowed the indemnity claim because Titan prevailed in part at the summary-judgment stage. So Titan is entitled to fees incurred before and after the second-amended complaint.

Scotlynn also argues Titan is not entitled to fees incurred in briefing the reasonableness of the fee award. (Doc. 188 at 4). But the court has already held Titan is entitled to such an award (Docs. 171 at 6; 177 at 13).

Lastly, Scotlynn argues Titan's hours should be reduced to account for unsuccessful motion practice and vexatious litigation tactics. But Titan did not engage in vexatious litigation tactics. Further, Scotlynn offers no authority requiring the court to reduce its award to account for unsuccessful motions, and persuasive

Eleventh Circuit authority counsels otherwise. *See Eagle Hosp. Physicians, LLC. v. SRG Consulting, Inc.*, 346 F. App'x 403, 404 (11th Cir. 2009) ("[T]he law in this circuit is that a prevailing party entitled to attorneys' fees is not to be penalized for failed motions.").

In sum, the voluminous timesheets do not lend themselves to an hour-by-hour analysis, and an across-the-board reduction is the most appropriate method of setting the fee award. Reasoning that no more than 20% of the requested hours are both compensable and attributable to the indemnity claim, the court should adopt an across-the-board reduction of 80%. The resulting $64,648.90 award reasonably accounts for the proper scope of the court's entitlement order and the reductions outlined above.

## II.   Rule 54 Costs

Titan seeks $17,710.25 in costs: $12,773.55 for transcript-related costs, $1,151.70 for witness fees, $460.00 for compensating interpreters, and $3,325.00 for compensating "court-appointed experts." It filed a bill of costs (Doc. 175) and supporting documentation (Doc. 175-1).[9] For items that Titan seeks to recover as taxable costs, Scotlynn only objects to the expert-compensation item because the expert was not appointed by the court. (Doc. 183 at 20).

---

[9] Much to the court's consternation, Titan's counsel supplied a haphazard collection of duplicative documents. Counsel are reminded that a conscientious submission makes for an expeditious disposition.

Federal Rule of Civil Procedure 54(d)(1) codifies the "venerable presumption that prevailing parties are entitled to costs." *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 377 (2013). It provides that costs "should be allowed to the prevailing party" unless federal law or a court order provides otherwise. Fed. R. Civ. P. 54(d)(1). While using "should" makes clear that "whether to award costs ultimately lies within the sound discretion of the district court," *Marx*, 568 U.S. at 377, if a court exercises its discretion to deny full costs, it "must have and state a sound basis," *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000) (en banc).

Section 1920 of Title 28 of the United States Code limits a district court's discretion under Rule 54(d)(1) by allowing costs only for:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may decline to allow costs in section 1920 but may not allow costs not in section 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442-443 (1987). And here, because the expert-compensation item was not for a court-appointed expert, Scotlynn's objection should be sustained. With the absence of any other objection to the bill of costs, the clerk should be directed to tax costs in

the amount of $14,385.25. [10]

## III.   Non-Taxable Expenses

Titan seeks $7,298.79 [11] for non-taxable expenses: $3,325 for its expert-witness fee, $1,754.50 for Westlaw/Lexis/Pacer fees, $1,485.39 for travel expenses, $494 for process-server fees, $172.40 for shipping and postage, and $67.50 to rent a conference room. But as discussed above, almost all these expenses would have been incurred—and not recoverable—if this action did not include any contract claims. Moreover, if the recommendations of this report are accepted, Titan will recover all its taxable costs even though the court has the discretion to limit that recovery (for instance, courts often disallow the various ancillary charges of the court reporters). Accordingly, its request for non-taxable expenses should be reduced by 80% to $1,459.76.

---

[10] Notably, for judgment-enforcement purposes, costs awarded pursuant to Rule 54(d) accrue interest from the date of the appealable judgment on the merits. *See Taylor Indus. Constr., Inc. v. Westfield Ins. Co.*, No. 8:16-cv-2960-T-SPF, 2020 WL 1873595, *11 (M.D. Fla. Apr. 15, 2020) (collecting cases). Accordingly, the award of costs will bear interest from the judgment date of August 23, 2021. (Doc. 156). Interest is calculated "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the judgment." 28 U.S.C. § 1961(a). It "shall be computed daily to the date of payment ... and shall be compounded annually." *Id*. § 1961(b).

[11] Both Titan's bill of costs and its list of non-taxable expenses included $763.65 for transcription costs related to the apparent deposition of Roger Shore. So this amount has been deducted from its request for non-taxable expenses. Though Titan could have sought its process-server fees as taxable costs (reduced to the rates that would have been charged by the US Marshal), it elected to seek them as non-taxable expenses.

## IV.   Conclusion

For the reasons discussed above, the court should direct the clerk to enter an amended judgment in favor of defendant Titan Trans Corporation in the amount of $66,108.66 (representing $64,648.90 in attorney's fees and $1,459.76 in non-taxable expenses); and further direct the clerk to complete, execute, and separately docket the second page of Doc. 175 (Titan's bill of costs) to tax $14,385.25 for costs.

Respectfully recommended on August 2, 2023.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1.

**The parties are firmly encouraged to meaningfully confer in good faith to narrow or resolve any objections to this report before the end of the fourteen-day objection period, and to file a notice of any agreed resolution of Titan's claim for fees, costs, and non-taxable expenses.**