UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTLYNN USA DIVISION, INC.,

    Plaintiff,

v.                                                                Case No.: 2:18-cv-521-JLB-NPM

TITAN TRANS CORPORATION,

    Defendant.
_____/

## ORDER

On August 2, 2023, the Magistrate Judge entered a Report and Recommendation, recommending that Defendant's Supplemental Motion on Amount of Award of Attorney's Fees and Non-Taxable Costs (Doc. 180) be granted in part and denied in part. (Doc. 189). On August 16, 2023, Defendant filed its objections to the Report and Recommendation. (Doc. 190). After an independent review of the record, the Court **OVERRULES** Defendant's objections (Doc. 190) and **ADOPTS** the Report and Recommendation (Doc. 189). As set forth herein, the Court finds that Defendant's Supplemental Motion on Amount of Award of Attorney's Fees and Non-Taxable Costs (Doc. 180) is **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case's factual and procedural history was extensively outlined in the Court's previous orders. (*See* Doc. 155). In short, pursuant to a Broker-Carrier Agreement between the parties, Defendant transported a cargo of meat for

Plaintiff's customer, Cargill Meat Logistics Solutions, Inc. ("Cargill").  (*Id.* at 3).  For various reasons, Cargill rejected that cargo, leading to a loss of the full value of the beef.  (*Id.* at 16, 27–28).

Plaintiff initially sued Defendant under the Broker-Carrier Agreement, but the Court held that Plaintiff's contractual indemnity claim was preempted by the Carmack Amendment to the Interstate Commerce Act, and Plaintiff chose not to revisit the issue before trial.  (Doc. 61 at 11–13; Doc. 1 at ¶¶ 7, 15–16).  Instead, Plaintiff asserted a claim in Count II under the Carmack Amendment as Cargill's assignee (the "Carmack Amendment claim").  (Doc. 62 at ¶¶ 18–24; Doc. 144 at ¶ 14).  Additionally, in Count I, Plaintiff sought "entry of a judgment against [Defendant] . . . for costs, expenses and attorney fees" based on an indemnification provision in the Broker-Carrier Agreement (the "indemnity claim").  (Doc. 62 at ¶¶ 15–17; Doc. 147-1 at ¶¶ 12(c), 22).

After a three-day bench trial, the Court found that Plaintiff did not establish a prima facie case under the Carmack Amendment claim and that, even if it did, Defendant had shown that it was not negligent and the damage to the cargo was caused by shipper error.  (Doc. 155 at 43–52).  As to Plaintiff's indemnity claim for attorney's fees and costs in Count I, the Court, building off the prior preemption ruling (Doc. 61), concluded that the claim was also preempted.  (Doc. 155 at 55–57).  In a ruling in the *alternative*, the Court determined that even if the indemnity claim was not preempted, it would fail for essentially the same reason that the Carmack Amendment claim failed.  (*Id.* at 57–58).

2

Subsequently, the Court found Defendant entitled to attorney's fees and nontaxable expenses under Florida Statute § 57.105(7) for prevailing on the indemnity claim. (*See* Doc. 177; Doc. 171). Specifically, the Court found that "[Defendant] is not entitled to attorney's fees and costs on the Carmack Amendment claim, despite any overlap in [Plaintiff's] various claims," but is "entitled to an award . . . for defending against Plaintiff's [indemnity claim], obtaining its fee-and-expense award, and taxing its costs." (Doc. 177 at 9, 13).

Notwithstanding the Court's previous Order, and pursuant to Local Rule 7.01(c) and Florida Statute § 57.105(7), Defendant filed the instant motion seeking $308,001.98 in attorney's fees, the amount of attorney's fees generated for defending the *entire case*. (Doc. 180 at 1–3). Defendant argues that it is entitled to the attorney's fees and costs generated from the defense of the *entire case* "because at no time was the [indemnity] claim . . . logically or practically disassociated from the Carmack Amendment claim through discovery and trial." (*Id.* at 2). Defendant states that "[t]he contract and the Carmack Amendment defense ran in complete unison." (*Id.* at 2–3).

Upon consideration of the parties' arguments, United States Magistrate Judge Mizell recommended granting in part and denying in part Defendant's Supplemental Motion on Amount of Award of Attorney's Fees and Non-Taxable Costs. (*See* Doc. 189). Specifically, Judge Mizell reasoned that "no more than 20% of [Defendant's] requested hours are both compensable and attributable to the [defense of] the indemnity claim," and thus recommended that the hours be reduced

3

across-the-board by 80%. (*Id.* at 11). Defendant filed objections to the Report and Recommendation, and this matter is extensively briefed for this Court's consideration. (Doc. 190; *see also* Doc. 180; Doc. 183; Doc. 187; Doc. 188).

## STANDARD OF REVIEW

A district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). When a party makes a timely and specific objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*

## DISCUSSION

Magistrate Judge Mizell provided five reasons that Defendant's requested fee award should be reduced. (*See* Doc. 189 at 5–11). Defendant filed objections to the Report and Recommendation that mirror Judge Mizell's findings, arguing that: (1) "at least 80% of [Defendant]'s time is compensable and attributable to the indemnity claim" (Doc. 190 at 1 (original typeface omitted)); (2) "at least 80% of paralegal time claimed by [Defendant] involved legal work" (*id.* at 2 (original typeface omitted)); (3) the "billing entries that are 'block billed' are compensable if the entries contain enough detail for the Court to discern the work performed and the amount of time expended on the tasks is reasonable" and does not support an 80% reduction in fees (*id.* at 3–4); (4) "[Defendant]'s hours are reasonable" in light of the "complexity, duration, and time necessary to argue and prevail in this case" (*id.* at 4–5 (original typeface omitted)); and (5) "[r]educing [Defendant]'s non-taxable

4

expenses by 80% would penalize [Defendant] for prevailing on two claims instead of just a single contract claim" (*id.* at 6).

The Court agrees with Judge Mizell's reasoning and is not persuaded by Defendant's objections. Accordingly, after an independent review of the record and upon consideration of Defendant's objections, for the reasons set forth below, the Court finds that the thorough and well-reasoned Report and Recommendation is due to be adopted.

> 1. **Whether Plaintiff's Assertion of a Carmack Amendment Claim Should Reduce Defendant's Award.**

Defendant first argues that "at least 80% of [Defendant]'s time is compensable and attributable to the indemnity claim" because "[Plaintiff]'s indemnity claim was an alternative means of recovery for cargo damage that could have been pled as a standalone claim." (Doc. 190 at 1–2 (original typeface omitted)). Defendant claims that it "would have been awarded a much higher percentage of its fees if [Plaintiff] had omitted the Carmack [Amendment] claim." (*Id.* at 2). The Court is not persuaded.

Defendant's objection to Judge Mizell's recommendation proposes a hypothetical situation wherein the Carmack Amendment Claim was omitted and argues that the result would have been different in that scenario. But Defendant cites no case law and does not even attempt to explain why this Court should consider the outcome in the hypothetical scenario it posits. Whether Defendant would have been awarded a higher fee if Plaintiff had not asserted its Carmack

5

Amendment claim is irrelevant because Plaintiff *did* assert a Carmack Amendment claim.

Moreover, while not explicitly raised in Defendant's objection, the Court notes that it would not be persuaded by any argument that the defense of the indemnity claim necessarily included the complete defense of the Carmack Amendment claim. (*See* Doc. 180 at 2–3). To that end, as early as October 25, 2019, the Court provided the parties with a substantive determination on the indemnity claim, finding that it was preempted by the Carmack Amendment. (*See* Doc. 61 at 11–12). In other words, by October 25, 2019, Defendant was on notice that its defense of the facts surrounding the underlying cargo loss did not relate to the preempted indemnity claim. Accordingly, any continuing defense of the indemnity claim necessarily did not "r[u]n in complete unison" (Doc. 180 at 2–3) with the defense of the Carmack Amendment claim. As pointed out by Judge Mizell, beginning on October 25, 2019, any defense of the indemnity claim would have shifted from a defense "on [the] facts surrounding the alleged cargo loss" (Doc. 180 at 17 (emphasis omitted)) to a preemption defense and a defense "reminding the Court that if the Carmack Amendment claim fails the indemnity claim does too" (Doc. 189 at 7).

Indeed, the Court's August 20, 2021 Order readily demonstrates that Plaintiff's indemnity claim was defeated because "the evidence at trial demonstrate[d] that [the indemnity claim was] preempted." *Scotlynn USA Div., Inc. v. Titan Trans Corp.*, 555 F. Supp. 3d 1246, 1275 (M.D. Fla. 2021). It also shows that, alternatively, the indemnity claim would have failed for the same

6

reason the Carmack Amendment claim failed. *Id.* at 1275–76. Presenting the legal arguments associated with these two defenses would have required significantly less time than presenting the defense associated with the subject cargo loss. Again, to the extent Plaintiff could have presented an indemnity claim that Defendant was liable for the cargo loss, the Court provided a determination on October 25, 2019, finding that exact claim to be preempted by the Carmack Amendment.

Accordingly, by October 25, 2019, Defendant was on notice that its defense of the facts surrounding the underlying cargo loss related to the Carmack Amendment claim rather than the preempted indemnity claim. Additionally, Defendant's counsel only billed approximately $40,000.00 in attorney's fees by October 2019 (Doc. 180-2 at 2–8). Thus, even if the Court found Defendant entitled to its complete fees before it learned of the preemption of Plaintiff's indemnity claim, Judge Mizell's $64,648.90 attorney's fees recommendation encompasses that result.

As reasoned by Judge Mizell, awarding Defendant its fees for the full defense of the case, including the fees for defending against the Carmack Amendment claim and the indemnity claim, "would be inconsistent with the general unavailability of fee-shifting for Carmack Amendment claims, the reciprocal nature of Florida Statute § 57.105(7), the court's entitlement order, and the role the indemnity claim played in this action." (Doc. 189 at 8). In sum, the Court is not persuaded by this objection and finds that Judge Mizell's reasoning on this point appropriately contributes to the reduction of Defendant's award.

7

### 2. Whether Defendant's Paralegal Billing Should Reduce Defendant's Award.

Next, Defendant argues that "at least 80% of paralegal time claimed by [Defendant] involved legal work." (Doc. 190 at 2 (original typeface omitted)). Defendant appears to especially take issue with the Report's finding that "*almost all* the paralegal time claimed by [Defendant] involves clerical work." (*Id.* (quoting Doc. 189 at 8) (emphasis added)).

Defendant's objection misses the mark. The Eleventh Circuit has stated that paralegal time is recoverable, but "only to the extent that the paralegal performs work traditionally done by an attorney." *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1334 (M.D. Fla. 2002) (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988)). "Where that is not the case, paralegal work is viewed as falling within the category of unrecoverable overhead expenses." *Id.* (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)).

Even if the clerical work did not constitute "almost all" of the paralegal work billed, Defendant's Time Summary shows that a *substantial* portion of time billed by Defendant's paralegals involved clerical, non-compensable work. (*See* Doc. 180-2). For example, a single page from Defendant's Time Summary includes the following descriptions: "organize documents from third parties," "[p]repare exhibits for deposition," "[c]omplete preparation of exhibits for use at the deposition of[ ]Boguslaw Zaranski," "obtain copies of all cases[ ]cited; review calendars and provide dates to opposing counsel[ ]for deposition," "telephone call to . . . discuss appearance by video at Boguslaw Zaranski's deposition," and "telephone calls . . .

8

regarding continuation of deposition." (*Id.* at 9). Tasks such as these are purely clerical in nature, and they are neither reasonably sought nor compensable. *Scelta*, 203 F. Supp. 2d at 1334 ("[C]ounsel correctly points out that there is a substantial amount of claimed time that was spent doing clerical and secretarial work, such as gathering materials, copying them, mailing them, and refiling them."); *see also Strickland v. Air Rescue Air Conditioning, Inc.*, No. 8:15-cv-1017-T-23AEP, 2016 WL 11581971, at *4 (M.D. Fla. Aug. 25, 2016) ("[T]he majority of the work performed by the two paralegals constitutes clerical or secretarial work, including contacting court reporters, calendaring deadlines, gathering and copying documents, preparing binders and exhibits, and filing and mailing documents."), *report and recommendation adopted*, 2016 WL 11581970 (M.D. Fla. Sept. 12, 2016). Because a *substantial* portion of the paralegal work Defendant billed was clerical, this factor was appropriately considered by Judge Mizell in reducing Defendant's award.

To the extent Defendant appears to request that the Court determine the exact percentage of time that the paralegal work qualified as clerical, the Court declines to do so. The Court will not perform Defendant's work for it by sifting through four years of time entries to determine the exact proportion of Defendant's paralegal bills that are clerical verses compensable. Rather, given the voluminous nature of the requested fees, and Defendant's own apparent reluctance to perform an hour-by-hour analysis and reduction *before* filing the instant motion or objection to the Report and Recommendation, the Court finds it appropriate to adopt the

9

Report and Recommendation's across-the-board fee cut. Importantly, while Judge Mizell recommends an 80% reduction of Defendant's fees, he did *not* find that 80% of Defendant's paralegal work was clerical. Instead, he considered that the *substantial* paralegal time claimed that was not compensable should be considered in reducing Defendant's award. Indeed, it was only one out of five factors that Judge Mizell relied on in arriving at his recommendation.

In sum, the Court is not persuaded by this objection and finds that Judge Mizell's reasoning with respect to paralegal billing appropriately contributes to the reduction of Defendant's award.

### 3. Whether Defendant's Block Billing and Vague Time Entries Should Reduce Defendant's Award.

For its third objection, Defendant asserts that the "billing entries that are 'block billed' are compensable" and do not support an 80% reduction in fees. (Doc. 190 at 3–4). Defendant also argues that "[e]ven if the Court deems [Defendant]'s block billed time entry descriptions less thorough than it would otherwise prefer, the Report's drastic recommendation to only award [Defendant] 20% of its fees is a far deviation from the fee reductions applied for block billing in other cases." (*Id.* at 3 (citations omitted)).

The Court agrees with the Report and Recommendation in finding that Defendant's time entries regularly include block billed and vague entries that make it difficult for the Court to determine how much time was actually spent on any task and thus to assess whether the time spent was reasonable. Especially in the instant situation, where Defendant entered a capped, risk-sharing fee agreement on

10

September 12, 2020 (*see* Doc. 180 at 15), thereby removing Defendant's "incentive to ensure legal billing was in its best interest, efficient, and non-duplicative" (*id.* at 12), it is imperative that counsel provides precise descriptions of completed work to permit the Court to engage in a meaningful review of the hours billed.

    The Time Summary provided does not meet this threshold. (*See* Doc. 180-2). For example, Defendant's counsel billed five and a half hours for an entry described as "[r]eview and analyze deposition testimony of numerous witnesses. Revise deposition declarations. Draft and send email correspondence to opposing counsel. Receive, review and respond to email correspondence from opposing counsel" and an additional five and a half hours for an entry described as "[r]eview and analyze deposition testimony. Determine designations regarding the same. Receive, review, and respond to opposing counsel email correspondence. Review and[ ]analyze deposition designations from opposing counsel." (*Id.* at 28). These block billed entries are too vague for the Court to determine how much time was actually spent on specific legal tasks and therefore, the Court cannot reliably assess whether the time spent was reasonable.

    In this case, where counsel entered into a capped, risk-sharing fee agreement, the Court finds that Judge Mizell appropriately considered Defendant's vague and block billed time entries in reducing Defendant's fee award.

    The Court is also not persuaded by Defendant's argument that an 80% reduction is an extreme deviation from standard "block billing" or "vague" entry reductions. Defendant's argument, again, misconstrues the Report and

11

Recommendation.  The 80% reduction of Defendant's award is not exclusively attributable to block billing and vague time entries.  Again, this factor was only one out of five factors that Judge Mizell relied on in arriving at his recommendation.  In the 80% across-the-board reduction, the first factor—that Defendant is not entitled to attorney's fees for its defense of Plaintiff's Carmack Amendment claim— contributes heavily to the total reduction.  *Cf. Opus Grp., LLC. v. Int'l Gourmet Corp.*, No. 11-23803-CIV, 2013 WL 12383485, at *7–8 (S.D. Fla. July 26, 2013) (recommending a 75% across-the-board award reduction when a defendant was only entitled to fees for its defense of one out of four claims asserted by the plaintiff and when the defendant could not separate out the time spent specifically defending against the fee-basis claim).

Additionally, Defendant was on notice that it may not be entitled to attorney's fees for its defense of the *entire* case.  In fact, a substantial portion of Defendant's underlying motion analyzes that exact issue.  (*See* Doc. 180 at 2–3, 6–9, 17–19).  Knowing that this outcome was possible, Defendant could have sought, in the alternative, an award excluding attorney's fees for its defense of the Carmack Amendment claim using a method Defendant believed was appropriate.  Defendant sought no such alternative relief, leaving the Court to fashion an appropriate remedy to account for the fact that Defendant is not entitled to fees for its defense of the Carmack Amendment claim and underlying cargo loss.  Defendant now seems to argue that the Court should have utilized a method other than an across-the-board fee cut, but notably still provides the Court with no reasonable remedy for this

12

unique issue, other than to suggest that the Court instead adopt a 20% fee cut, which Defendant does not support with any case law and which the Court finds would not be justified under these circumstances.

In sum, the Court is not persuaded by this objection and finds that Judge Mizell's analysis with respect to block billing appropriately contributes to the reduction of Defendant's award.

4.   **Whether Defendant's Hours are Reasonable.**

Through an apparent objection to Judge Mizell's finding that "the hours sought by [Defendant] are excessive" (Doc. 189 at 9), Defendant argues that its "hours are reasonable" considering the "complexity, duration, and time necessary to argue and prevail in this case" (Doc. 90 at 4–5 (original typeface omitted)).

Notably, while Defendant's objection apparently relates to the fourth factor in the report (*compare* Doc. 189 at 9, *with* Doc. 190 at 5), Defendant fails to address the specific examples raised in the report. Upon review of the examples, which include a thirty-minute bill for an item (Doc. 180-2 at 4 (citing Doc. 31)) that should have taken, at most, two minutes to review, a two-and-a-half-hour bill for the preparation of an interested-persons disclosure (*id.* (citing Doc. 30)), and an over 120-hour bill for the preparation of the attorney's fees motions (*see id.* at 32–36; Doc. 187-1 at 49), the Court agrees with Judge Mizell in finding that Defendant's Time Summary "illustrates a pattern" of occasionally excessive billing.

In sum, the Court is not persuaded by Defendant's objection on this point, and finds that Judge Mizell's analysis with respect to whether Defendant's hours are reasonable appropriately contributes to the reduction of Defendant's award.

### 5. Whether Defendant's Non-Taxable Expenses Should Be Reduced.

Finally, Defendant argues that "[r]educing [Defendant]'s non-taxable expenses by 80% would penalize [Defendant] for prevailing on two claims instead of just a single contract claim." (Doc. 190 at 6).

Defendant fails to cite case law or provide meaningful analysis in support of this objection. The Court is not persuaded by Defendant's perfunctory objection and adopts the report's recommendation that the 80% across-the-board reduction apply to the non-taxable expenses sought by Defendant. *See Opus Grp., LLC.*, 2013 WL 12383485, at *9 ("The 75 percent across-the-board reduction must apply to this nontaxable expense and so the award must be reduced.").

## CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant's Objections (Doc. 190) are **OVERRULED**, and the Report and Recommendation (Doc. 189) is **ADOPTED**.

2. Defendant's Supplemental Motion on Amount of Award of Attorney's Fees and Non-Taxable Costs (Doc. 180) is **GRANTED in part** and **DENIED in part** as set forth herein.

3. The Clerk of Court is directed to enter an amended judgment in favor of Defendant Titan Trans Corporation in the amount of $64,648.90 in attorney's fees and $1,459.76 in non-taxable expenses.

4. The Clerk of Court is also directed to complete, execute, and docket Defendant Titan Trans Corporation's Bill of Costs (Doc. 175) in the amount of $14,385.25.

**ORDERED** in Fort Myers, Florida on September 28, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE